IN THE COURT OF APPEALS OF TENNESSEE

EASTERN SECTION

FILED

October 16, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

ANNETTE CHRISTENBERRY ) C/A NO. 03A01-9706-CV-00239
and J.G. CHRISTENBERRY, )
) KNOX CIRCUIT
    Plaintiffs-Appellants, )
) HON. WHEELER ROSENBALM,
v. ) JUDGE
)
HENRY S. NELSON, JR., M.D., ET AL,) AFFIRMED
) AND
    Defendants-Appellees. ) REMANDED

ANNETTE CHRISTENBERRY, Pro Se, Seymour, Tennessee.

HOWARD H. VOGEL and STEPHEN C. DAVES, O'NEIL, PARKER & WILLIAMSON, Knoxville, for Defendants-Appellees.

**O P I N I O N**

Franks. J.

In this medical malpractice action, the Trial Court granted the defendant, Henry S. Nelson, Jr., M.D., summary judgment, and plaintiffs have appealed.

Plaintiffs' daughter was involved in a tragic motor vehicle accident and was taken to the U.T. Medical Center in Knoxville, where she died. Nelson is one of the physicians that plaintiffs sued, alleging negligent treatment of their daughter.

Nelson filed a motion for summary judgment, attaching his affidavit and the deposition of a neuro-surgeon. Nelson, in his affidavit, stated that he was familiar with the appropriate standard of acceptable medical care for general surgeons practicing in Knoxville, Tennessee community, and stated:

> I am familiar with the appropriate standard of acceptable medical care for general surgeons practicing in the Knoxville, Tennessee community, inclusive of November 1993.

On November 15, 1993, at approximately 2:35 a.m., Denise Christenberry was brought by ambulance to the University of Tennessee Medical Center and was initially treated in the Emergency Room. Attached is a copy of the Discharge/Death Summary, Exhibit 1. The medical records indicate that upon arrival at the Emergency Room, a history was obtained that this was a twenty-three year old female who was an unrestrained driver in a motor vehicle crash. Upon arrival in the Emergency Room, she was unresponsive. Her pupils were dilated and unresponsive to light. She had no response to deep pain and had a Glasgow coma scale of 3. She had agonal respirations and was intubated shortly after arrival. A CT scan was ordered and obtained. I was contacted at home by telephone at approximately 3:00 a.m. as Ms. Christenberry was being taken to have the CT scan performed. I was contacted a second time at home by the hospital personnel and was informed of the results of the CT scan. The CT scan of the head revealed the presence of diffuse cerebral edema and subarachnoid hemorrhage, a possible thin left frontal subdural hematoma, and a right parietal and temporal squamosal fracture. The CT scan of the spine indicated a comminuted fracture involving T-11 with associated posterior element fractures. The CT scan of the abdomen showed no significant injury to the abdominal organs.

From the information provided to me by the personnel who were caring for the patient at the hospital, which included four physicians, it was my opinion that she did not have an injury that required general surgical treatment, and it was further my opinion that there was no treatment I could provide within my specialty of general surgery. The assessment was that the patient had a severe closed head injury. Appropriate treatment was initiated by the medical personnel in the Emergency Room by intubation, hyperventilation, and supportive care. A consultation with neurosurgery was ordered. The patient was taken to Intensive Care.

Ms. Christenberry was seen by a neurosurgeon, whose clinical findings were consistent with brain death. Other tests and examinations were performed that confirmed no brain function. I saw and examined the patient on the morning of November 15, 1993 and results of my examination were consistent with these findings. It was my opinion within a reasonable degree of medical certainty, that there was no general surgical treatment that I could have performed at any time that would have assisted the patient.

The patient died as a result of her injuries on November 16, 1993.

It is my opinion, within a reasonable degree of medical certainty, that in my role in the care of Denise Christenberry on November 15 and 16, 1993, that I complied with appropriate standards of acceptable medical care for general surgeons practicing at that time in the Knoxville, Tennessee community. It is my opinion that I did not deviate from such standards. It is further my opinion, within a reasonable degree of medical certainty, that no act or omission on my part caused or contributed to the injuries and death of Denise Christenberry.

2

In response to the motion, one of the plaintiffs, Annette Christenberry, filed her affidavit, which essentially states that she was familiar with the appropriate guidelines set out by the American College of Surgeons for care in a level one trauma center, and stated:

> It is my opinion that Dr. Sperry Nelson treated my daughter with very questionable drugs, paralyzing agents that turn off brain transmission, without anyone knowing he was the person seeing to her. He was never in a room to explain her condition to the family and we only because aware through the records after my daughter's death he was the primary physician.

The General Assembly has established the plaintiff's burden of proving malpractice against a physician. This is set forth in T.C.A. §29-26-115, which states:

> **29-16-115. Claimant's burden in malpractice action - Expert testimony - Presumption of negligence - Jury instructions. -** (a) In a malpractice action, the claimant shall have the burden of proving by evidence as provided by subsection (b):
>
> (1) The recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which he practices or in a similar community at the time the alleged injury or wrongful action occurred;
> (2) That the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standards; and
> (3) As a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred. . . .

When plaintiffs were confronted with the motion for summary judgment with affidavits of expert witnesses stating that defendant had acted with reasonable care in accordance with the recognized acceptable standard of professional practice in his medical specialty, the burden shifted to plaintiffs to offer evidence to dispute this fact. The plaintiffs were required to offer contradictory expert testimony and absent such response to defendant's affidavit, summary judgment was appropriate. *Ayers v. Rutherford Hosp., Inc.,* 689 S.W.2d 155 (Tenn. App. 1984).

In this case, plaintiff's affidavit only offers lay opinions, and essentially expresses the affiant's personal beliefs, which do not constitute admissible evidence on the issue. *See Fowler v. Happy Goodman Family*, 575 S.W.2d 496 (Tenn. 1978).

3

Consequently, we conclude that plaintiffs have failed to meet the requirements for maintaining this action as required in T.C.A. §29-26-115.  We affirm the judgment of the Trial Court, with costs of appeal assessed to appellants.


_____
Herschel P. Franks, J.


CONCUR:



_____
Houston M. Goddard, P.J.




_____
Clifford E. Sanders, Sp.J.